UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAVI DEVNANI, an individual residing
in Beverly Hills, Michigan d/b/a                    Case No. 17-cv-10810
Viatechno,

                                                    Paul D. Borman
                    Plaintiff,                      United States District Judge

v.

DKM SOLUTIONS, INC., a Texas
Corporation, JEFF GRAZIOPLENE,
an individual residing in Texas,
SAMUEL EVANS, an individual
residing in Texas,

                    Defendants.
_____/


## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (ECF NO. 11)

    In 2015, Defendant DKM Solutions, Inc. ("DKM") hired the Plaintiff to create

a website for DKM.  In this breach of contract and copyright infringement action,

Plaintiff claims that Defendants have (1) failed to pay him for his web design services

in breach of a verbal agreement and (2) wrongfully utilized technology that Plaintiff

created and copyrighted, which allows individuals to use and rate businesses on the

Internet, and wrongfully used Plaintiff's source code, software, graphic designs and

other copyrighted material, without Plaintiff's permission and in breach of a verbal

1

agreement between Plaintiff and Defendants.

Defendants contend that Plaintiff never performed per the parties' agreement, never created the website, and "swindled" DKM, a Texas corporation, out of tens of thousands of dollars but move to dismiss this action, in lieu of an answer, for lack of personal jurisdiction over any of the three Defendants and improper venue, and alternatively move to transfer venue to the Western District of Texas, Austin Division. Plaintiff has responded to Defendants' motion (ECF No. 16) and Defendants have replied (ECF No. 18).

The Court held a hearing on October 13, 2017, and GRANTED Defendants' motion on the record. This Opinion and Order now follows and the Court DISMISSES the action for lack of personal jurisdiction over the Defendants.

## I.    BACKGROUND[1]

Plaintiff has been an independent contractor in the field of computer programming, web design, and graphic design since 1999. In 2003, Plaintiff began doing business as the entity "ViaTechno." Plaintiff never incorporated ViaTechno, but asserts that he does business under this name in Michigan. (ECF No. 16, Pl.'s

---

[1] Because this motion has been presented on the parties' Declarations and no evidentiary hearing has been requested by either party, the Court must consider the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff and cannot credit "controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

Resp. Ex. A, June 20, 2017 Declaration of Ravi Devnani ¶ 10.)  In 2003, Plaintiff

began building a web-based System that can be used by various businesses to interface

with their clients, customers, and the public. (The "System") (Devnani Decl. ¶ 11.)

Plaintiff has licensed this System to dozens of small businesses in Michigan and

elsewhere in the country and a large portion of Plaintiff's income comes from fees

paid by these licensees.  (*Id*.)  Plaintiff represents that the System is "registered" to

him and was "substantially if not entirely created and developed in the State of

Michigan." (*Id*. ¶ 12.)  On or about March 10, 2017, at approximately the same time

that Plaintiff filed this lawsuit against DKM, Plaintiff applied for a copyright

registration to protect his System.  (*Id*. Ex. E, March 10, 2017 Certificate of

Registration.)

In February, 2015, Plaintiff was introduced to Mr. Grazioplene and Mr. Evans

through a mutual friend, and began working with their corporation DKM to build a

web page for a business concept that Mr. Grazioplene and Mr. Evans had regarding

a ratings business for car salesmen in the automobile industry.  Both Mr. Grazioplene

and Mr. Evans are employed by a car dealership in Georgetown, Texas, as a finance

director and sales person respectively.  (Devnani Decl. ¶ 16; Def.'s Mot. Ex. A, April

19, 2017 Declaration of Jeff Grazioplene ¶ 29; Def.'s Mot. Ex. B, April 19, 2017

Declaration of Samuel Evans ¶ 25.)  Plaintiff and Messrs. Grazioplene and Evans

discussed, but never executed, a license agreement and contract for Plaintiff's services.  There is no dispute, however, that the parties did begin to perform under the terms of this "verbal agreement" as discussed, with Plaintiff beginning work on the website and Defendants remitting $5,000 every other month to Plaintiff for his services.  (Devnani Decl. ¶¶ 19-20; Evans Decl. ¶ 11.)  The relationship began in approximately April, 2015, and ended in November, 2016, when DKM terminated the verbal agreement. (Grazioplene Decl. ¶ 12; Evans Decl. ¶ 10; Devnani Decl. ¶ 37.)

Plaintiff avers that he is a Michigan resident and has lived in Michigan his entire life.  He alleges that he currently resides and works at 15558 Buckingham Avenue in Beverly Hills, Michigan, where he has lived since 2014.  (Devnani Decl. ¶¶ 2, 7.)  Prior to 2014 Plaintiff resided at 516 Bennaville, Birmingham, Michigan, his childhood home, for 5 years.  Prior to 2009 Plaintiff was a student at the University of Michigan.  Throughout his years as a Michigan resident, he has paid taxes as an individual in Michigan, maintained bank accounts with local Michigan banks, maintained a Michigan Drivers License, voted as a Michigan resident and availed himself of Michigan health care benefits through past and present state health care plans.  (*Id.* ¶ 5, Exs. A-D.)  All of Plaintiff's business and personal banking is done through Charter One Bank in Birmingham, Michigan, which is now called Citizens Bank.  This bank has no branches in Oregon.  (*Id.* ¶ 6.)

Plaintiff states that his job as an independent contractor enables him to travel and spend stretches of time in other cities, but he claims that he returns home to Michigan, "after some time away," to have face-to-face meetings with clients. (Devnani Decl. ¶ 13.) Plaintiff does not claim to have ever had a meeting with anyone from DKM in Michigan and the individual Defendants deny that either of them has ever been in the State of Michigan. (Grazioplene Decl. ¶¶ 27; Evans Decl. ¶ 23.) Plaintiff does claim that Mr. Grazioplene and Mr. Evans once called Plaintiff at his Michigan home on his Michigan telephone number. (Devnani Decl. ¶ 17.) Both Mr. Grazioplene and Mr. Evans testify that all of their dealings with Plaintiff, except for a few phone calls from Plaintiff to DKM in response to DKM's request for updates while Plaintiff was purportedly visiting his grandmother in Michigan, were with Plaintiff in Oregon. (Grazioplene Decl. ¶¶ 15, 18; Evans Decl. ¶¶ 12-15.)

Since January, 2014, Plaintiff has traveled back-and-forth frequently to Portland, Oregon, sometimes spending several weeks at a time staying with his mother who relocated to Portland, Oregon in 2014, to live near Plaintiff's brother. (*Id*. ¶¶ 14, 15.) Although Plaintiff avers that he does business under the d/b/a of ViaTechno in Michigan, it is clear (and Plaintiff does not dispute) that he does business under the ViaTechno name in the State of Oregon as well. According to Defendants, and not disputed by the Plaintiff, at the time that DKM negotiated the verbal agreement with

Plaintiff, and during the entire time that DKM worked with Plaintiff, DKM understood that Plaintiff lived at 6935 N. Michigan, Portland, Oregon 97217. (Def.'s Mot. Ex. A, April 19, 2017 Declaration of Jeff Grazioplene ¶¶ 14-15.) During their working relationship with Plaintiff, DKM sent all payments to Plaintiff at Plaintiff's Oregon address, pursuant to the parties' verbal agreement. DKM purchased a plane ticket for Plaintiff to fly from Portland, Oregon to Austin, Texas to meet with DKM and once sent a gift of Texas Barbeque to Plaintiff at his Portland, Oregon address. (*Id*. ¶¶ 15-16, PgID #s 90-95, 119-24.) Plaintiff offers no assertions to contradict these factual representations by the Defendants. Plaintiff offers no evidence, emails or other forms of correspondence, that would permit even an inference that Defendants should have believed that Plaintiff was running ViaTechno out of the State of Michigan. Indeed, as discussed further *infra*, all evidence in the record is to the contrary.

Beginning in March, 2016, Plaintiff had DKM set up an account with RackSpace, a Texas-based cloud hosting service that could perform geo-tracking services for DKM's web-based system. (Devnani Decl. ¶ 28.) Plaintiff was the administrator on the account and RackSpace utilized Plaintiff's Portland, Oregon address for purposes of RackSpace billings consistently from April, 2016 through the termination of the relationship with DKM. (Devnani Decl. ¶ 28; Grazioplene Decl.

at PgID #s 96-118.) Although DKM paid the RackSpace bills, RackSpace sent the bills to Plaintiff at his Portland, Oregon address. (*Id*.)

Plaintiff's social media presence clearly indicates that both he and his d/b/a are based in Portland, Oregon. Plaintiff's LinkedIn Account indicates that he does motion graphics at ViaTechno in the "Portland, Oregon Area." (Grazioplene Decl. at PgID # 125.) Plaintiff's Facebook Account represents that Plaintiff is "from" Birmingham, Michigan and "lives" in Portland, Oregon. (Grazioplene Decl. at PgID # 126.) And Plaintiff's Twitter Account, RaviDevnani@ViaTechno, lists Portland, Oregon as the operating location of the business. (Grazioplene Decl. at PgID # 127.) None of Plaintiff's social media accounts indicates any business presence in the State of Michigan. Plaintiff provides no controverting evidence regarding his social media and LinkedIN accounts.

According to Defendants, and not disputed by Plaintiff, Plaintiff represented to DKM at all times that he was present and operating his business out of Portland, Oregon. Plaintiff does aver, and DKM does not dispute, that he tendered to DKM early in the business relationship a copy of his Michigan Driver's License. (Devnani Decl. ¶ 21.) On two occasions, Plaintiff informed Mr. Grazioplene that he was visiting his grandmother in Michigan, and sleeping on her futon, and was unable to do much work from Michigan due to the lack of internet access. (Grazioplene Decl. ¶ 18.)

Plaintiff did instruct DKM to send tax paperwork to what DKM believed was Plaintiff's grandmother's address in Michigan, so that Plaintiff could continue to claim Michigan residence, thereby receiving health insurance and/or medical treatments provided by the State of Michigan. (Grazioplene Decl. ¶ 18.) Plaintiff does not deny that he represented to DKM that he visited and stayed with his grandmother when he was in Michigan.

## II.    STANDARD OF REVIEW

Plaintiff bears the burden of establishing, in response to Defendants' motion, that personal jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Court has discretion to make a determination as to the existence of personal jurisdiction without an evidentiary hearing but plaintiff must, by affidavit, set forth specific facts demonstrating that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458-59 (6th Cir. 1991).

A court must consider the pleadings and affidavits submitted by the parties in the light most favorable to the plaintiff and cannot credit "controverting assertions of the party seeking dismissal." *Id.* at 1459. "[A] defendant who alleges facts that would defeat the court's personal jurisdiction can invoke the court's discretion to order a pretrial evidentiary hearing on those facts." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). "If the written submissions raise disputed

issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing." *Id*. (internal citation omitted). Where there has been no evidentiary hearing, the plaintiff need only present a *prima facie* case in support of jurisdiction to defeat dismissal. *Id.* at 1458. *See also Miller v. AXA Winterthur Ins. Co*., 694 F.3d 675, 678 (6th Cir. 2012) (observing that in order to defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff's affidavits must only make out a *prima facie* showing and the pleadings and affidavits are viewed in the light most favorable to the plaintiff). Here neither party has requested an evidentiary hearing and the Court therefore considers the facts presented here by competing affidavits under the *prima facie* standard of proof. Plaintiff bears a "'relatively slight' burden at this stage of the proceedings." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 901 (6th Cir. 2017) (quoting *Air Prods & Controls, Inc. v. Safetech*, 503 F.3d 544, 549 (6th Cir. 2007)).

The Court must view the pleadings and affidavits "in a light most favorable to the plaintiff[] and do[es] not weight the controverting assertions of the party seeking dismissal." *MAG IAS*, 854 F.3d at 899 (internal quotation marks and citation omitted) (alterations added). If personal jurisdiction is found at the motion to dismiss stage based on the pleadings and affidavits, the party opposing jurisdiction "remain[s] free

to further contest the issue by requesting an evidentiary hearing or by moving for summary judgement if [] discovery reveals a material variance from the facts" that were determined based on the pleadings and affidavits." *NeoGen*, 282 F.3d at 893; *MAG IAS*, 854 F.3d at 899.

## III. ANALYSIS

"A federal court's exercise of personal jurisdiction . . . must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen*, 282 F.3d at 888. Thus, jurisdiction over a non-resident defendant is permitted in Michigan if suit can be brought against the defendant under Michigan's long-arm statute without violating the due process requirements of the Constitution:

> A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) (citation omitted). Deciding whether jurisdiction exists is not an idle or perfunctory inquiry; due process demands that parties have sufficient contacts with the forum state so that it is fair to subject them to jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("[T]he Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." (internal quotation marks and citations omitted)). The court's jurisdiction accordingly extends only to those parties who have in some fashion placed themselves in the hands of the tribunal.

*Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (alterations in original).

Michigan's long-arm statute extends "limited" jurisdiction over nonresident corporations pursuant to Mich. Comp. Laws § 600.715, and "general" jurisdiction over corporations pursuant to Mich. Comp. Laws § 600.711. Michigan's long-arm statute also provides for "limited" jurisdiction over individuals pursuant to Mich. Comp. Laws § 600.705 and "general" jurisdiction over individuals pursuant to Mich. Comp. Laws § 600.701. Limited or "specific" jurisdiction focuses on the relationship between the litigation and the forum state:

> "Specific" or "case-linked" jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy . . . in contrast to "general" or "all purpose" jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.* domicile).

*Walden v. Fiore*, 134 S. Ct. 1115, 1122 n. 6 (2014) (internal quotation marks and citations omitted) (alteration in original). Only limited or specific case-linked jurisdiction is at issue here.[2]

---

[2] Plaintiff presents no credible claim for general jurisdiction. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "[P]lace of incorporation, and principal place of business" are "paradig[m] bases for the exercise of personal jurisdiction." *Id.* (First bracket added) (citation omitted). DKM is a Texas corporation with its principal place of business in Texas. DKM is not registered to do business in Michigan, it does not own or lease property in Michigan and has no employees, officers, directors, representatives or agents in Michigan, has never transacted business in

The Michigan Supreme Court has interpreted Michigan's long-arm statute as providing for the "broadest possible grant of personal jurisdiction consistent with due process.'" *Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) (citing *Sifers v. Horen*, 385 Mich. 195, 198-99 (1971)). Because Michigan's long-arm statute has been interpreted as "extend[ing] to the limits imposed by federal constitutional due process requirements," the questions of (1) what is permissible under the Michigan long-arm statute and (2) what is consistent with federal constitutional due process necessarily merge and "become one." *MAG IAS,* 854 F.3d at 899 (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (alteration added). *See also Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) ("Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one.").

---

Michigan and has never entered into a contract to provide goods or services in Michigan. (Def.'s Mot. Ex. A, April 19, 2017 Declaration of Jeff Grazioplene ¶¶ 21-22; Ex. B, April 19, 2017 Declaration of Samuel Evans ¶¶ 17-18.) Defendant Grazioplene is a resident of Texas and has never lived in Michigan or maintained a domicile in Michigan, and in fact has never been to Michigan. (Grazioplene Decl. ¶¶ 3, 26-28.) Defendant Evans is a resident of Texas and has never lived in Michigan or maintained a domicile in Michigan, and in fact has never been to Michigan. (Evans Decl. ¶¶ 3, 23.) Plaintiff offers no facts or allegations to controvert these Declarations. Plaintiff offers no legal support for his assertion that general jurisdiction over Defendants is nonetheless appropriate here because Mr. Evans and Mr. Grazioplene are employed by car dealerships in Texas that are allegedly owned by General Motors, which is based in this district. The Court concludes that there is no basis for this Court to assert general personal jurisdiction over any of these Defendants.

Thus, the Court proceeds directly to the constitutional due process analysis.

"The due process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign, the Due Process clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id*. at 472 (internal quotation marks and citations omitted) (alteration in original).

Where a defendant "purposefully directs" his activities at residents of the forum state, that state has an interest in protecting its residents by "providing [them] with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id*. at 473 (alteration added). Where such purposeful conduct has occurred, the defendant can be assured that he will not be haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id*. at 475 (internal quotation marks and citations omitted). "[T]he constitutional touchstone remains whether the defendant purposefully established

'minimum contacts' in the forum State." *Id.* at 474 (quoting *Int'l Shoe*, 326 U.S. at 316).

The due process inquiry to determine "whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (internal quotation marks and citations omitted). The Sixth Circuit has long utilized a three-part test, first enunciated in *Southern Machine Co. v. Mohasco Ind., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968), to determine whether the exercise of specific personal jurisdiction over an out-of-state defendant comports with due process: (1) whether the defendant "purposely availed" himself of the privilege of "acting or causing a consequence" in the forum state; (2) whether the cause of action "arose from" defendant's activities in the forum state; and (3) whether defendant's acts or the consequences he caused have "a sufficiently substantial connection" with the forum state "so as to make the exercise of jurisdiction reasonable." *MAG IAS*, 854 F.3d at 899 (citing *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012) quoting *Southern Machine Co. v. Mohasco Ind., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Each one of the *Southern Machine* criteria "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th

Cir. 1989).

Turning to an analysis of the contacts of each of the Defendants with Michigan in the context of both Plaintiff's breach of contract and intentional tort claims, i.e. copyright infringement, misrepresentation and conversion claims, the Court concludes that the Plaintiff has failed to establish a *prima facie* case for personal jurisdiction over any of the Defendants. Viewing the facts presented in the light most favorable to the Plaintiff, and crediting each of Plaintiff's averments, the written submissions do not raise genuine issues of fact and do not meet Plaintiff's relatively light burden at this *prima facie* stage.

### A.    Purposeful Availment/Purposeful Direction

"This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the "unilateral activity of another party or a third person . . . ." *Burger King*, 471 U.S. at 475. "In defining when it is that a potential defendant should 'reasonably anticipate' out-of-state litigation,

> [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

471 U.S. at 474-75 (internal quotation marks and citations omitted).

"The Supreme Court has said that purposeful availment exists if the defendant created a 'substantial connection' with the forum state by engaging in 'significant activities within [the] State,' or by creating 'continuing obligations' to residents in that state." *MAG IAS*, 854 F.3d at 900 (quoting *Burger King*, 471 U.S. at 475-76) (alteration in original). Through such conduct, a defendant "manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. A defendant's physical presence in the state, while relevant to the purposeful availment inquiry, is not necessary. "So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King*, 471 U.S. at 476. *See also MAG IAS*, 854 F.3d at 900 (noting that physical entry into the forum, while not required, "is certainly a relevant contact") (citing *Walden*, 134 S. Ct. at 1122).

Where the Plaintiff's claim involves an intentional tort (here copyright infringement, fraud, and statutory conversion), the focus of the purposeful availment analysis shifts to consider whether the defendant's conduct was "purposefully

directed" or "expressly aimed" at the forum state. Intentional tort claims are analyzed under an "updated" version of the "effects test" first enunciated in *Calder v. Jones*, 465 U.S. 783 (1984), which considers whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

The personal jurisdiction inquiry at its core asks both whether a State has a legitimate interest in resolving the claims of a particular litigant and whether that litigant had "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (alteration in original). As the Supreme Court recently summarized:

> In determining whether personal jurisdiction is present, a court must consider a variety of interests. These include "the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice." *Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); see Daimler, supra, at ——–——, n. 20, 134 S.Ct., at 762, n. 20; *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen*, 444 U.S., at 292, 100 S.Ct. 559. But the "primary concern" is "the burden on the defendant." *Id.*, at 292, 100 S.Ct. 559. Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question. As we have put it, restrictions on personal jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d

1283 (1958). "[T]he States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all its sister States." *World–Wide Volkswagen*, 444 U.S., at 293, 100 S.Ct. 559. And at times, this federalism interest may be decisive. As we explained in *World–Wide Volkswagen*, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *Id.*, at 294, 100 S.Ct. 559.

*Bristol-Myers Squibb Co. v. Superior Court of California*, *San Francisco County*, 137 S. Ct. 1773, 1780-81 (2017).

Plaintiff has failed to produce sufficient evidence for this Court to find either purposeful availment or purposeful direction/express aiming here, either as to Plaintiff's breach contract claim or his copyright infringement, fraud, and conversion claims. These Defendants did not have "fair warning" that their conduct would subject them to jurisdiction in a court in the State of Michigan.

**1.    Plaintiff's Breach of Contract claim: purposeful availment.**

Plaintiff's breach of contract claim (Count I) against DKM alleges that DKM failed to pay Plaintiff all of the compensation due to him under the terms of the verbal agreement between the parties.  (Compl. ¶¶ 33-39.)  This Court may not exercise personal jurisdiction over DKM on Plaintiff's breach of contract claim unless DKM

purposefully entered into a connection within Michigan "such that [it] should reasonably anticipate being haled into court [in Michigan]." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Sixth Circuit applied the purposeful availment analysis in *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2008), noting that the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Air Products*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 475). *Air Products* involved an interstate contract between plaintiff Air Products, a Delaware company headquartered in Michigan, and defendant Safetech, a Kansas corporation. *Id*. at 548. Safetech opened a credit account with Air Products and over the course of a number of years, Safetech purchased goods on credit from Air Products, submitting hundreds of orders by phone, fax, email and regular mail to Michigan. *Id*. The goods were shipped by Air Products either to Safetech in Kansas or directly to Safetech's customers. *Id*. After several years, Safetech began failing to make payments to Air Products and litigation ensued in the United States District Court in Kansas. *Id*. The district court entered judgment in favor of Air Products but Air Products was never able to collect from Safetech, who allegedly was without funds to satisfy the judgment. Air Products later learned that Safetech had transferred

assets that should have been used to pay the Air Products judgment and Air Products filed suit against Safetech in state court in Michigan to recover on the breach of contract judgment. *Id.* at 549. Safetech removed the matter to federal district court and moved to dismiss for lack of personal jurisdiction. The district court granted the motion and the Sixth Circuit reversed.

The Sixth Circuit analyzed the due process implications of exercising jurisdiction over Safetech, discussing at length the "purposeful availment" prong of the minimum contacts constitutional analysis:

> With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions for the consequences of their activities.... In this case, the parties did not engage in a one-time transaction, but in a continuing business relationship that lasted a period of many years. Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business *it knew to be in Michigan*. Such contacts are not "random" or "fortuitous" or "attenuated," but are the result of deliberate conduct that amounts to purposeful availment.

503 F.3d at 551 (quoting *Burger King*, *supra* at 473, 478–479) (emphasis added). Similarly, in *LAK*, *supra*, the Sixth Circuit found that "a defendant that never sent its representatives into the forum state, and that did not consummate the contract there" was not subject to personal jurisdiction in Michigan. Unlike the defendant in *Southern Machine*, who entered into a licensing agreement with a plaintiff who had

a manufacturing plant in the forum state and therefore had a continuing interest in profiting from the Tennessee market, the defendant in *LAK* "had no continuing interest in profiting from the [Michigan] market." 885 F.2d at 1302 (internal quotation marks and citation omitted) (alteration in original). In *Light Source, Inc. v. Control Dynamics, Inc.*, No. 09-cv-14268, 2010 WL 2351489 (E.D. Mich. June 8, 2010), this Court applied the *Air Products* analysis to find personal jurisdiction where, as in *Air Products*, the relevant contacts "were initiated by [the defendant] with a *known Michigan-based company* in furtherance of the parties' business relationship." *Id*. at *4 (emphasis added). Here, Plaintiff has presented no evidence, and Defendants affirmatively deny, that Defendants had any basis to believe they were dealing with a Michigan-based company.

The first nine paragraphs of Plaintiff's Declaration assert Plaintiff's residence in and long term connections with the State of Michigan, including as proof of these connections his attendance at the University of Michigan for college, his Michigan drivers' license, proof of taxes paid in Michigan for the years relevant to this action, statements from his local bank, and proof of his local Michigan health care plan. (Devnani Decl. ¶¶ 1-9.) Plaintiff further avers that he is an independent contractor in the field of web and graphic design and has never incorporated his d/b/a "Via Techno," but alleges that he does business under this name in Michigan. Plaintiff

alleges that his proprietary web design System that is the subject of this action, which Plaintiff has licensed "to dozens of small businesses in the State of Michigan and elsewhere in the country," was substantially created and developed by him in the State of Michigan. (*Id.* ¶¶ 10-12.) Plaintiff states that he travels and works in other cities, and "can work remotely for several weeks or months at a time," but always "return[s] home to Michigan after some time away" for "face-to-face meetings with clients." (*Id.* ¶ 13.)

Notably, Plaintiff does not assert, and Defendants affirmatively deny, that there has ever been a face-to-face meeting with any of the Defendants in this action in the State of Michigan. Indeed, Plaintiff does not dispute Defendants' averment that none of them has ever traveled to or been in the State of Michigan and admits that the one face-to-face meeting they did have, was in Texas and that Defendants purchased Plaintiff's airline ticket *from Oregon* to attend that meeting. Plaintiff does confirm that he spends an extensive amount of time (several weeks at a time) working from Portland, Oregon. Plaintiff does not contest Defendants' evidence demonstrating that Plaintiff's LinkedIn and social media accounts represent that Plaintiff "lives in" Portland, Oregon and that his business, Via Techno, is located in Portland, Oregon. Plaintiff states that a mutual friend put him in touch with the Defendants and that the initial conversation was a call placed to Plaintiff by Mr. Grazioplene on Plaintiff's

Michigan telephone number while Plaintiff was at home in Michigan. (*Id*. ¶¶ 16-17.) Plaintiff asserts that he drafted an agreement (which the parties ultimately did not execute) at his home in Michigan and sent it to Mr. Grazioplene and Mr. Evans from his home in Michigan on a computer he purchased in Michigan. (*Id*. ¶¶ 19.) Plaintiff's Declaration goes on to discuss in detail the services he performed for the Defendants and the emails, texts, and voice mails that were exchanged among them during course of their relationship. None of these averments, however, suggest that Plaintiff ever mentioned to Defendants that he was doing business from Michigan or in any way disabused the Defendants of the idea (formed based on Plaintiff's representations and conduct) that they were dealing with an Oregon business and an Oregon resident. The one instance in which Defendants did reach out to Plaintiff in the State of Michigan, to send him tax information at Plaintiff's request, does not even involve conduct that forms the basis for Plaintiff's claims in this action. Nor does Plaintiff contest the Defendants' averment that Plaintiff told them he was visiting his grandmother in Michigan and specifically asked that Defendants therefore send his tax information to him there rather than his Oregon address, where Defendants had previously mailed everything to Plaintiff, including payments pursuant to the Agreement and gifts.

The many assertions made in Plaintiff's Declaration tell us a lot about

Plaintiff's connections to Michigan but nothing to support even an inference of Defendant's knowledge that Plaintiff was operating his business out of the State of Michigan when dealing with Defendants. Plaintiff does not assert or even infer that his location in Michigan during the negotiation stages of their relationship was ever communicated to the Defendants, who at all times were in Texas and were led to believe that they were dealing with an Oregon business. There are no emails or evidence of communications regarding the parties' business relationship that suggest any connection to the State of Michigan. Indeed, there are no emails or evidence of communications at all. Here, the Defendants aver in their Declarations that Plaintiff represented to them that he resided in Oregon. Plaintiff does not contest this assertion but simply explains that he was in Oregon for extended periods of time visiting family. He does not deny that he represented to Defendants that he resided in Oregon. Defendants believed that they were contacting an Oregon business and Plaintiff's social media accounts verified the Oregon contact information for the Plaintiff and for his d/b/a ViaTechno. Defendants aver that they sent payments to Plaintiff in Oregon (and never to Plaintiff in Michigan), sent gifts to Plaintiff in Oregon (and never to Plaintiff in Michigan), and purchased an airline ticket for Plaintiff to visit Texas departing from Oregon. Plaintiff does not contest any of these facts but adds the fact that Defendants once sent tax information to Plaintiff in Michigan, which Defendants

admit that they did – but explain that they did so because Plaintiff represented that he was visiting his grandmother and asked to have the tax information sent to a Michigan address. Plaintiff does not deny or even contradict this assertion. Plaintiff also states that at some point he had given Defendants a copy of his Michigan driver's license. Defendants knowledge that Plaintiff possessed a Michigan driver's license, or even if Plaintiff was "from" Michigan, these facts do not establish a basis for personal jurisdiction over them.

It is well established that entering into a contract with an individual in another state, although relevant to the inquiry, does not alone establish minimum contacts. *Burger King*, 471 U.S. at 478. "It is still incumbent upon the plaintiff to establish the requisite minimum contacts, as a condition to requiring an absent party to defend itself on the plaintiff's turf, and those contacts must still be sufficient to satisfy 'traditional notions of fair play and substantial justice.'" *LAK*, 885 F.2d at 1299. Even crediting all of Plaintiff's averments, Plaintiff has not established sufficient purposeful availment here for purposes of Plaintiff's breach of contract claim, which alleges that Defendants failed to pay Plaintiff all that he was due under the parties' verbal agreement. It is undisputed that none of the Defendants has ever been to the State of Michigan. The parties were introduced by a mutual friend, Phillip Haack, a DKM shareholder who resides in the State of Texas. (Devnani Decl. ¶ 16; Grazioplene Decl.

¶ 38.)   The only face-to-face meeting referred to by either party took place in Texas – and Plaintiff's airline ticket *from Oregon* was purchased for Plaintiff by the Defendants.   There is no evidence that DKM knew it was dealing with a Michigan-based company and indeed all of the relevant facts establish that DKM was affirmatively led by Plaintiff to believe that it was dealing with an Oregon company, and the parties' course of dealing, including payments made by DKM in Oregon under the terms of the verbal agreement,  gifts sent by DKM to Plaintiff in Oregon and DKM's purchase of an airline ticket for Plaintiff from his Oregon location to meet with Defendants in Texas, all establish the reasonableness of DKM's belief that it was dealing with an Oregon business and an Oregon resident.   Nothing in the evidence would have placed DKM on notice that it might be haled into Court in Michigan to answer for any breach of the agreement with Plaintiff, who represented himself and his business as haling from Oregon.   Plaintiff has established insufficient minimum contacts over the Defendants with regard to Plaintiff's breach of contract claim to satisfy due process.

2.    **Plaintiff's copyright infringement, misrepresentation, and statutory conversion claims: purposeful direction/express aiming.**

Plaintiff claims in Counts II-VI that Defendants engaged in copyright infringement "by using and continuing to use the System without [Plaintiff's] permission and beyond the scope of the Agreement that was eventually breached by

26

DKM." (Compl. ¶¶ 42, 47, 54, 61, 67.) Plaintiff also claims that Defendants infringed Plaintiff's copyright by changing the passwords with RackSpace (a Texas-based company) to prevent Plaintiff from accessing his RackSpace account and then "expanding Agent Raider to apply to all possible services and industries." (Compl. ¶¶ 44, 49, 56, 63, 70.) Plaintiff's misrepresentation claims (Counts VII-IX) allege that Defendants "knowingly misrepresented their identities when they called RackSpace [in Texas] and impersonated Mr. Devnani in order to gain access to the administrative side of the Agent Raider business account and change each individual's access level and password." (Compl. ¶¶ 74, 80, 86.) Finally, Plaintiff's statutory conversion claim against DKM only alleges that DKM "exerted domain [over Plaintiff's software] by changing the passwords with RackSpace [in Texas] to prevent Mr. Devnani from accessing and using his own intellectual property." (Compl. ¶ 87.) Plaintiff makes no evidentiary assertions with regard to the location of Rack Space, but Defendants aver that RackSpace's global headquarters are in San Antonio, Texas. (Grazioplene Decl. ¶ 38.)

These intentional tort claims are analyzed under the "effects test" first enunciated in *Calder*, *supra*, which considers whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. In *Walden*, the Supreme

Court "reset" the personal jurisdiction calculus where the Plaintiff's assertion that jurisdiction is proper rests on the effects of defendant's tortious conduct. "'*Walden* forecloses [any] theory of personal jurisdiction' based [solely] on the argument that jurisdiction is proper where a plaintiff felt the effects of a defendant's actions." *Zellerino v. Roosen*, 118 F. Supp. 3d 946 (E.D. Mich. 2015) (quoting *Maxitrate Tratamento Termico E Controles v. Super Systems, Inc*., 617 F. App'x. 406, 409, (6th Cir. May 28, 2015)) (alteration in original). "*Walden* does not undermine the Court's prior decision in *Calder v. Jones*; it merely refines it. Intentional acts may furnish the requisite "minimum contacts" with a forum if the defendant intends to injure the plaintiff *there*." *Zellerino*, 118 F. Supp. 3d at 952 (emphasis in original).

In *Walden*, TSA agents stopped two individuals (Fiore and Gipson) in San Juan, Puerto Rico and found them carrying a large sum of cash. TSA let Fiore and Gipson keep the cash and board a plane to Atlanta, with a scheduled connection in Atlanta to Las Vegas, Nevada. *Id*. at 1119. After their flight for Atlanta departed, a law enforcement officer at the San Juan airport notified Walden's DEA task force at the Atlanta airport that Fiore and Gipson had boarded a plane to Atlanta, where they planned to catch a connection to Las Vegas, Nevada, with the suspicious amount of cash. *Id*. When Fiore and Gipson landed in Atlanta, Walden and other task force members met them at the gate and ultimately seized the cash. Fiore and Gipson

continued on to Las Vegas without the cash. When Fiore and Gipson, through their attorney, sought return of the funds, Walden swore out a probable cause affidavit to support the seizure. Fiore and Gipson maintained that the probable cause affidavit was false and misleading. *Id*. at 1120. Ultimately the funds, which Fiore and Gipson maintained all along were legitimate gambling winnings, were returned to Fiore and Gipson and no forfeiture complaint was filed. *Id*. Fiore and Gipson then filed a Fourth Amendment civil damages action against Walden (and others) in the United States District Court for the District of Nevada under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

The Supreme Court concluded that the Nevada District Court could not exercise personal jurisdiction over Walden consistent with due process because Walden's alleged false swearing of a probable cause affidavit had nothing to do with Nevada and was connected to Nevada only because Fiore and Gipson happened to reside there. The Supreme Court stressed that even where plaintiff alleges an intentional tort, the "defendant's suit-related conduct must create a substantial connection with the forum State," and that "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 134 S. Ct. at 1121-22 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). Thus, it is not sufficient that the defendant may know that the plaintiff is a forum resident and will suffer damages

there. *Id. See, e.g. Matrix, Inc. v. Woodland Trading Co.*, No. 12-9228, 2013 WL 12131187, at *4 (C.D. Cal. April 1, 2013) (finding that in a copyright infringement action, "something more" than mere foreseeability of harm to plaintiff in the forum was required, "such as a purpose to compete with [plaintiff] in [the forum]").

As United States District Judge David Lawson explained in *Zellerino*, *Walden* instructs that the focus in the purposeful availment analysis must be on the defendant's intentional contacts with the forum and not on the plaintiff's contacts with the forum and the fact that plaintiff was injured in that forum. The plaintiff in *Zellerino* made no allegations whatsoever regarding the effects of defendant's conduct in Michigan – the allegations regarded the effects on the plaintiff who resided in Michigan but did not explain how the defendant's conduct connected *him* to Michigan. The court reasoned:

> Applying those principles [from *Walden*] here, it is apparent that the defendants' conduct of accessing the plaintiff's credit report, which presumably took place in California, cannot furnish a basis for them to be sued in a Michigan court, even though the plaintiff felt the impact of that privacy breach in Michigan. None of the defendants' challenged conduct had anything to do with Michigan itself. The plaintiff does not allege that any of the defendants' alleged actions took place in Michigan. Instead, the complaint alleges that the defendants, California residents, obtained the plaintiff's consumer report from Equifax, a Georgia-based company, and falsely certified that the report was for a lawful purpose.
>
> The plaintiff argues that the Court may exercise jurisdiction because the defendants' actions harmed a Michigan resident. But *Walden* makes clear that "[t]he proper question is not where the plaintiff experienced a

particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." [*Walden*] at 1125. To find otherwise would "improperly attribute[ ][the] plaintiff's forum connections to the defendant[s] and make [ ] those connections 'decisive' in the jurisdictional analysis." *Id.* at 1125. Meaningful contacts may exist in California or Georgia, but they do not exist here. . . . Intentional acts may furnish the requisite "minimum contacts" with a forum, if the defendant intends to injure the plaintiff *there*.

*Zellerino*, 118 F. Supp. 3d at 952 (emphasis in original). As the Sixth Circuit in *MAG IAS* explained:

In holding that "mere injury to a forum resident is not a sufficient connection to the forum," the Court [in *Walden*] distinguished its prior decision in *Calder* [], where it had found personal jurisdiction in California over an out-of-state defendant based on a libelous article published there, reasoning that the tort had involved the California community beyond just the plaintiff.

854 F.3d at 900 (citations omitted) (alterations added.) The Sixth Circuit also discussed the refinement of the *Calder* "effects test" post-*Walden* in *Maxitrate Tratamento E Controles v. Super Systems, Inc*., 617 F. App'x 406, 408 (6th Cir. 2015). The Sixth Circuit in *Maxitrate* observed that the defendant tabloid in *Calder* had "sold over 600,000 copies in California" where the plaintiff resided and "knew that 'the brunt of [the plaintiff's] injury would be felt' there." *Id*. at 408 (quoting *Calder*, 465 U.S. at 785, 789-90). Thus, the tort involved an express aiming to injure the plaintiff in her home state of California where she resided and was a well-known celebrity. The "tort had involved the California community beyond just the plaintiff."

*MAG IAS*, 854 F.3d at 900.

Plaintiff's intentional tort claims in this case focus on Defendants' alleged use in Texas of Plaintiff's source code without a license to enhance their Texas-based website and Defendants' alleged interference with Plaintiff's administrative access to a cloud hosting account that DKM created with RackSpace, a company with its global headquarters in Texas and no alleged presence in the State of Michigan. Defendants performed all of these alleged acts without ever entering the State of Michigan, and with every reasonable belief (based on Plaintiff's own representations that Plaintiff does not deny) that they were dealing with Plaintiff in Oregon and with Plaintiff's Oregon-based company. Nothing in the course of the parties' dealings as alleged in the Complaint and further explained in Plaintiff's Declaration establishes that Defendants in any manner sought to create an ongoing business relationship that was directed at the State of Michigan. Oregon perhaps, but Michigan no. None of the Defendants had any reason to believe that they were exercising the privilege of conducting business with the Plaintiff under the protection of Michigan law.

Even assuming that Defendants did know that Plaintiff had a Michigan drivers' license and phone number and a grandmother who lived in Michigan, *Walden* teaches that it is not enough that Defendants may have known these facts and could have surmised that Plaintiff might feel the effects of their harmful conduct in Michigan.

Defendants' alleged intentional tortious conduct occurred without Defendants ever entering Michigan, or reaching out to Michigan in any way, as they believed at all times (based on facts that are undisputed by the Plaintiff) that Plaintiff resided in and conducted business from Oregon. Plaintiff has submitted evidence regarding his own extensive contacts with the State of Michigan but none regarding Defendants' conduct relevant to this litigation that connects Defendants with the State of Michigan. Plaintiff offers no emails or other communications or any evidence at all that might tether the locus of the parties' dealings to the State of Michigan. "[P]laintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 134 S. Ct. at 1122.

## B. Arising From/Reasonableness

The Plaintiff having failed to establish purposeful availment, and the Court having concluded that exercising personal jurisdiction over the Defendants offends due process here, the Court need not analyze the second and third prongs of the *Southern Machine* test. "The plaintiff having failed to pass the "purposeful availment" test, we need not dwell on the other criteria of *Mohasco Industries*; each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK*, 885 F.2d at 1303.

*See also See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518 (6th Cir. 2006) ("As we find that the first prong is not satisfied, analysis of the second and third prongs is unnecessary."); *ABC Debt Collections, LLC v. Gleason Corp.*, No. 16-14225, 2017 WL 2242362, at *4 (E.D. Mich. May 23, 2017) (noting that each *Mohasco Industries* criterion "'represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked,'" and ruling that purposeful availment and therefore personal jurisdiction does not exist "without 'dwell[ing] on the other criteria'") (quoting *LAK*, 885 F.2d at 1303); *In re Automotive Parts Antit. Litig.*, 12-md-02311, 2014 WL 2999271, at *6 (E.D. Mich. July 3, 2014) ("Because Plaintiffs did not meet the first element of the test articulated in *Mohasco*, analysis of the remaining elements is unnecessary.")

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 11) and DISMISSES Plaintiff's Complaint WITHOUT PREJUDICE.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated:  October 18, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 18, 2017.

s/Deborah Tofil
Case Manager